UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------  x
C.M.B. PRODUCTIONS, INC.                                      :
                              Plaintiff,                      :
                                                             :
             -against-                                       :        MEMORANDUM & ORDER
                                                             :
SRB BROOKLYN, LLC, ARDEN KAISMAN,                            :        No. 19-CV-02009 (ENV) (CLP)
and MICHAEL BRUNO,                                           :
                                                             :
                              Defendants.                    :
                                                             :
-----------------------------------------------------------  x
```

VITALIANO, D.J.

Plaintiff C.M.B. Productions, Inc. ("CMB"), brings this action against defendants SRB

Brooklyn, LLC, Dr. Arden Kaisman, and Michael Bruno (collectively, "SRB"), alleging claims

for trademark infringement, false designation of origin, unfair competition, and false advertising

under the Lanham Act, 15 U.S.C. §§ 1114, 1125, as well as claims under New York law for

unfair & deceptive practices and trademark dilution.  Presently before the Court are the parties'

cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1]  *See* Dkts.

44, 45, 48.  For the reasons that follow, plaintiff's motion is denied, and defendants' motion is

granted.

---

[1] CMB moves for partial summary judgment on its three Lanham Act claims, while defendants cross-move for summary judgment on all six counts.

Background[2]

CMB, founded by Craig Bernabeu in 1999, designs and sells sound systems to night clubs.  Plaintiff's Statement of Material Undisputed Facts ("Pl.'s 56.1"), Dkt. 44-1, ¶¶ 1–2.  Bernabeu is the sole shareholder and President of CMB, and is known within the night club industry for his sound system services.  Pl.'s 56.1 ¶¶ 1, 4.  Defendant SRB is a New York limited liability company that operates a Gowanus, Brooklyn night club previously known as ANALOG BKNY.  Defendants' Statement of Material Undisputed Facts ("Defs.' 56.1"), Dkt. No. 45-2, ¶ 3.  Dr. Kaisman is SRB's founder and sole member, and Bruno is the night club's former manager.  Defs.' 56.1 ¶¶ 4–5.

In 2015, Bernabeu and Bruno, who by then had known each other for several decades, arranged to add one of CMB's analog sound systems to defendants' Gowanus night club to attract more business.  Pl.'s 56.1 ¶¶ 22, 25–26; Defs.' 56.1 ¶ 6.  Under the arrangement, the night club, then known as ONE77, would become ANALOG BKNY, a name that highlighted Bernabeu's newly installed analog sound system.[3]  For its services, CMB would be paid a base fee for each event hosted at the night club, with a nightly bonus if the club had a successful night

---

[2] The background facts are primarily derived from the parties' Rule 56.1 Statements of Material Undisputed Facts and are not in dispute unless otherwise noted.

[3] The parties dispute whether the ANALOG mark idea originated as a result of a discussion between Bernabeu and Bruno, or, as CMB contends, whether by the time the parties joined forces, Bernabeu had acquired common law trademark rights to the ANALOG mark as a result of his past usage of it.  *See* Plaintiff's Reply to Defendants' Rule 56.1 Statement of Controverted Facts ("Pl.'s 56.1 Reply"), Dkt. 44-65, ¶ 9.  The parties also dispute whether Dr. Kaisman agreed at the outset to change the name to ANALOG BKNY, or, whether, because Bruno began promoting events using that name, Dr. Kaisman reluctantly agreed to the name change.  Defendants' Statement of Controverted Facts in Opposition to Motion for Partial Summary Judgment ("Defs.' 56.1 Reply"), Dkt. 44-54, ¶ 39.  These disputes are immaterial to the resolution of the cross-motions.

in terms of bar sales.  Pl.'s 56.1 ¶ 37.  With the parties' agreement in place, the joint venture launched in early 2016.

A year later, with the collaboration still intact, CMB applied to register the ANALOG BKNY word mark and the related **ANALOG** logo mark on the federal trademark register. Defs.' 56.1 ¶¶ 10–11.  The United States Patent and Trademark Office ("USPTO") registered the marks on its supplemental register for "providing showrooms for the goods of others in the field of sound system technologies; [r]etail store services featuring sound system technology, speakers, and sound equipment" and for "[d]ance club services; [n]ightclub services; [a]rranging and conducting nightclub entertainment events; presentation of live show performances."  *Id.* ¶¶ 10–11.  Shortly thereafter, plaintiff also applied to register the word mark CLUB ANALOG for "[p]roviding showrooms for the goods of others in the field of sound system technologies; [r]etail store services featuring sound system technology, speakers, and sound equipment."  The USPTO registered this mark on its principal register, *id.* ¶ 12, however neither party introduces evidence of anyone using the CLUB ANALOG mark during the relevant time period.

From 2016 to 2019, the ANALOG BKNY marks were used by both parties in connection with the night club.  Defs.' 56.1 Reply ¶ 33.  For example, SRB's in-house social media and marketing team used the marks in connection with advertisements for the club.  Pl.'s 56.1 ¶ 59. Bernabeu also used the marks when posting on his personal social media accounts about events at the night club.  Defs.' 56.1 ¶ 16.  Bernabeu contends that during the nearly three-year-long arrangement between the parties, "several [of Bernabeu's personal] posts received many reactions, and others had several user comments."  Pl.'s 56.1 Reply ¶ 16.  During this period, several online articles either mentioned or featured the night club, including industry publications praising the club for its sound system.  Defs.' 56.1 ¶ 20; Pl.'s 56.1 ¶ 53.  The parties

dispute the extent to which such coverage was unsolicited, or due to the efforts of the club's in-house marketing and promotion team.

Over the course of the three-year arrangement, the night club's bar gross sales amounted to, in the aggregate, $1.4 million, but the parties dispute whether that figure is indicative of the club's economic success. *See* Pl.'s 56.1 Reply ¶ 21; Defs.' 56.1 ¶ 21. For example, SRB cites documents it produced during discovery purporting to show that, while the parties' arrangement was in place, ANALOG BKNY failed to turn a profit in any year. Defs.' 56.1 Reply ¶ 52; Defs.' 56.1 ¶ 26. Plaintiff, on the other hand, says that these financial statements include nonbusiness-related expenses that put the gross profit figures into question. Pl.'s 56.1 Reply ¶ 115.

Ultimately, in late 2018, Bernabeu, frustrated by what, he believed, was the nightclub's lack of success, announced his intention to end CMB's collaboration with the night club, Pl.'s 56.1 ¶ 72, and, on January 1, 2019, made good on his promise by dismantling and removing the night club's sound system, Pl.'s 56.1 ¶ 73. At that time, Bernabeu also requested that defendants cease using the ANALOG BKNY marks, but defendants did not comply: they continued to use the marks, and, on social media, utilized the hashtag #analogbkny in connection with events at the night club. Pl.'s 56.1 ¶¶ 73–77. Defendants did, however, change the name of the night club from ANALOG BKNY to ANALOG BROOKLYN and replace the night club's sound system. Pl.'s 56.1 ¶¶ 79, 81. In February 2019, shortly after ending the parties' arrangement, plaintiff sent defendants cease-and-desist letters demanding that they stop using the ANALOG BKNY trademarks, but, despite plaintiff's requests, defendants continued to use the marks to promote the night club until at least December 2019. Pl.'s 56.1 ¶¶ 84–90.

In contrast to defendants' use of the marks, CMB's use of them subsequent to the dissolution of the parties' night club venture appears to be limited, though there is no dispute that

Bernabeu embarked on, and, in certain instances, utilized the marks in connection with, discrete business ventures following his partnership with defendants.  For example, Bernabeu used the marks to promote a pop-up event at Market Hotel, another Brooklyn night club, in March 2020, though the success of that event was hindered by the COVID-19 pandemic and accompanying government shutdowns.  Pl.'s 56.1 ¶¶ 95–96.  Bernabeu also maintains a website that uses the ANALOG BKNY marks, and, while it is disputed by the parties, claims to have used the marks in conjunction with an online radio show as well.  Pl.'s 56.1 ¶ 113; Defs.' 56.1 Reply ¶ 113. Finally, although CMB also installed an analog sound system—similar to the ANALOG BKNY unit—in one other Brooklyn club, *Nowadays*, CMB does not use the ANALOG BKNY marks in connection with that club.  *See* Pl.'s 56.1 ¶¶ 102, 100–104; Defs.' 56.1 Reply ¶ 99.

On April 8, 2019, plaintiff brought this action, Dkt. 1, and, on June 30, 2020, filed an amended complaint, Dkt. 38.  The parties submitted cross-motions for summary judgment on November 5, 2020.  Dkts. 44, 45.

### Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that a district court may grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is material "if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Reeves v. Anderson*, No. 11 Civ. 3770, 2014 WL 7336459, at *3 (S.D.N.Y. Dec. 24, 2014) (citing *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012)).  "In determining if a genuine dispute of material fact exists, 'the court must resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought.'"  *Fletcher v.*

*Standard Fire Ins. Co.*, 80 F. Supp. 3d 386, 390 (E.D.N.Y.2015) (quoting *Buckley v. Deloitte &*
*Touche USA LLP*, 888 F. Supp. 2d 404, 415 (S.D.N.Y.2012), *aff'd*, 541 Fed. Appx. 62 (2d Cir.
2013)).  "Where, as here, both parties move for summary judgment, 'each party's motion must be
examined on its own merits, and in each case all reasonable inferences must be drawn against the
party whose motion is under consideration.'" *Gen. Star Indem. Co. v. Driven Sports, Inc*., 80 F.
Supp. 3d 442, 449 (E.D.N.Y.2015) (quoting *Lumbermens Mut. Cas. Co. v. RGIS Inventory*
*Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010)).

  In opposing a motion for summary judgment, "it is insufficient for the nonmoving party
'merely to assert a conclusion without supplying supporting arguments or facts.'" *Id.* (cleaned
up) (quoting *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996)).
"Once the moving party has met its burden, the opposing party 'must do more than simply show
that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must
come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (emphasis
in original) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002.  "Where it is
clear that no rational finder of fact 'could find in favor of the nonmoving party because the
evidence to support its case is so slight,' summary judgment should be granted." *F.D.I.C. v.*
*Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir.2010) (quoting *Gallo v. Prudential Residential*
*Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

<u>Discussion</u>

A.  Lanham Act Claims

  Section 32 of the Lanham Act provides a cause of action against any person who uses in
commerce, without consent of the registrant, "any reproduction, counterfeit, copy, or colorable
imitation of a registered mark in connection with the sale, offering for sale, distribution, or

advertising of any goods or services on or in connection with which such use is likely to cause confusion." 15 U.S.C. § 1114(1)(a).  To make out a *prima facie* case for federal trademark infringement under § 32, a plaintiff must prove, first, that its mark is entitled to protection, and, second, that defendants' use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.  *Savin Corp.  v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004) (quoting *Virgin Enters., Ltd. v. Nawab,* 335 F.3d 141, 146 (2d Cir. 2003)); *Gameologist Grp., LLC v. Scientific Games Int'l, Inc.*, 838 F. Supp. 2d 141, 152 (S.D.N.Y. 2011), *aff'd*, 508 F. App'x 31, 32 (2d Cir. 2013).  Defendants take aim at CMB's contention that its designations are entitled to protection under the Lanham Act.

For a mark to be "protectable," it must be "distinctive."  *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 649–50 (S.D.N.Y. 2016), *aff'd sub nom. LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA*, 720 F. App'x 24 (2d Cir. 2017).  Such distinctiveness can be demonstrated in two ways.  First, a mark is "inherently distinctive" if its "intrinsic nature serves to identify a particular source."  *Id.* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753, 2757, 120 L. Ed. 2d 615 (1992)); *see also Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 162–63, 115 S. Ct. 1300, 131 L. Ed. 2d 248 (1995) (inherently distinctive marks "almost automatically tell a customer that they refer to a brand").  However, even if a mark is not inherently distinctive, it may "acquire" distinctiveness by achieving "secondary meaning" among the relevant consumer market.  *See Qualitex Co.*, 514 U.S. at 162–63.  A mark has acquired "secondary meaning" when, "in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself."  *Two Pesos*, 505 U.S. at 766 n.4 (internal citations omitted).  Instructively,

"[m]arks which are merely descriptive of a product" cannot not qualify as inherently distinctive, and, therefore, are protectable only where they have achieved secondary meaning. *Id.* at 769.

With respect to the ANALG BKNY marks, the parties do not dispute that because they describe the night club's sound system and location, the marks are descriptive, and therefore merit protection only if they have acquired secondary meaning. *See* Pl.'s Reply Mem., Dkt. 44-66, at 5; *see also Thompson Med. Co., Inc. v. Pfizer, Inc.* 753 F.2d 208, 212–13 (2d Cir. 1985) (descriptive terms become protected marks "only where secondary meaning can be established); *Morgans Grp. LLC v. John Doe Co.*, No. 10 Civ. 5225, 2012 WL 1098276, at *6 (S.D.N.Y. Mar. 31, 2012) (similar).

Whether a mark has acquired secondary meaning in the minds of consumers is a question of fact that turns on the holistic consideration of six non-dispositive factors: consumer studies, sales success, unsolicited media coverage, attempts to plagiarize and length and exclusivity of use, and advertising expenditures. *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992).

As for proof, the burden of proving secondary meaning is on the trademark claimant: "a party seeking to establish secondary meaning must meet 'vigorous evidentiary requirements,' and must show that the mark acquired secondary meaning by the time the allegedly infringing mark came onto the market. *Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 425 (S.D.N.Y. 2012) (quoting *Thompson*, 753 F.2d at 215–16).

Consequently, to prevail on its motion for summary judgment, CMB must introduce evidence of secondary meaning such that there is no genuine issue of material fact that it exists. On the flipside, summary judgment in favor of SRB is appropriate if plaintiff fails to make a showing from which a reasonable trier of fact could conclude that the ANALOG BKNY marks

had acquired secondary meaning at the time defendants alleged infringement began.  *See Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, No. 14 Civ. 277S, 2020 WL 1659832, at *10 (W.D.N.Y. Mar. 27, 2020).

While district courts should be cautious in weighing these factors at the summary judgment stage, summary judgment is nonetheless warranted in cases where the proponent of the alleged trademark has failed to raise a material issue of fact on the question of secondary meaning.  *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 344 (E.D.N.Y. 2007) (citing *Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1071 (2d Cir. 1995)).

With respect to the first of those factors, CMB has offered no evidence of any consumer surveys, which are otherwise "the most direct and persuasive evidence of secondary meaning." *Black & Decker Corp. v. Dunsford*, 944 F. Supp. 220, 227 n.9 (S.D.N.Y. 1996) (internal citations omitted).  While a small business like CMB may not be able to "mount a substantial study," *Lopez*, 883 F. Supp. 2d at 426, the absence of any evidence as to marketplace perception weighs against a finding of secondary meaning.

Nor does the "sales success" factor support a finding of secondary meaning.  CMB argues that "substantial sales" occurred throughout the parties' arrangement and cites to evidence indicating that the night club's revenues totaled more than $1.4 million between 2016 and 2019.  Pl.'s Mem., Dkt. 44-2, at 16.  That is, however, a rather bald assertion.  First off, that sales figure tallies the club's net *bar sales*, *see* Pl.'s Reply Mem. at 12, in contrast to the typical case in which the sales concern products bearing the trademark at issue.  *Cf. Deere & Co. v. MTD Holdings Inc.*, No. 00 Civ. 5936, 2004 WL 324890, at *11 (S.D.N.Y. Feb. 19, 2004) (finding secondary meaning where "from 1992 through 2001, Deere sold approximately $43.3 billion

worth of equipment bearing its green and yellow trade dress.")   Here, while possibly tied, to some extent, to promotion and advertising that utilized the disputed trademarks, the evidence of sales success at the nightclub is minimally indicative of secondary meaning because CMB offers no evidence explaining what portion of the $1.4 million sales figure was tied to the use of the marks.  *See Therapy Prods., Inc. v. Bissoon*, 623 F. Supp. 2d 485, 495 (S.D.N.Y. 2009).

To the point, CMB wholly fails to contextualize this sales number.  *See Car-Freshner Corp. v. D & J Distrib. & Mfg., Inc.*, No. 14 Civ 391, 2015 WL 3385683, at *9 (S.D.N.Y. May 26, 2015) (testimony that $140,000 in gross sales over a roughly two-year period $140,000 was of little help "without a point of comparison."); *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 321 (S.D.N.Y. 2012) (similar).  For example, while CMB states that the night club "dramatically increased sales success after licensing and promoting the ANALOG BKNY mark," Pl.'s Opp. Mem., Dkt. 45-15, at 10, it does not offer evidence—such as the night club's revenues prior to the parties' arrangement, or any alternative probative evidence—in support of that contention, *see Jewish Sephardic*, 478 F. Supp. 2d at 373.  In sum, CMB does not meet its burden of proving sales success attributable to the ANALOG BKNY trademarks.  This factor, therefore, militates against a finding of secondary meaning.

Turning to the next factor, CMB's evidence of unsolicited media coverage is inadequate. For instance, while "*extensive*, unsolicited media coverage of a product is a strong indication that a mark has obtained secondary meaning." *RVC Floor Decor, Ltd. v. Floor and Decor Outlets of America, Inc.*, 527 F. Supp. 3d 305, 320 (E.D.N.Y 2021) (collecting cases) (emphasis in original), CMB offers only a handful of publications—most of them specific to the nightclub industry—that are, simply, insufficient to tilt the secondary meaning favor in its favor, *see Capri Sun GmbH v. Am. Beverage Corp.*, No. 19 Civ. 1422, 2022 WL 976270, at *39 (S.D.N.Y. Mar.

31, 2022) (citing cases).   Moreover, while Bernabeu attests that these industry-specific outlets

sought out interviews in connection with the club, *see* Bernabeu Decl., Dkt. 44-3, at ¶ 58, he also

testified that media coverage of the club was, in some cases, a result of his solicitation efforts,

*see* Bernabeu Dep. Tr., Dkt. 45-5, at 146:14–16; *cf. Gameologist*, 838 F. Supp. 2d at 159 (media

coverage factor unsatisfied where it was unclear whether articles were solicited).   In any event,

even assuming that the media coverage of the nightclub was unsolicited, limited as it was, this

factor also weighs against a finding of secondary meaning.

    Viewed from the opposite angle, while "[e]vidence that a mark has been widely copied is

persuasive evidence of secondary meaning," *Lopez*, 883 F. Supp. 2d at 428, here, far from

offering evidence of widespread copying of the ANALOG BKNY marks, CMB has not

introduced evidence of copying by anyone other than defendants, *see Strange Music, Inc. v.

Strange Music, Inc.*, 326 F. Supp. 2d 481, 489 (S.D.N.Y. 2004) ("[P]laintiffs have been unable to

demonstrate that, save for defendants, third parties have used or attempted to plagiarize their

mark.")  As such, this factor, too, weighs against a finding of secondary meaning.

    Nor does the length and exclusivity of CMB's use of the marks support a finding of

secondary meaning.  In analyzing this factor, the relevant time to be considered is the period

between plaintiff's initial use of the mark and the start of defendants' alleged infringement.  *See

Louis Vuitton*, 209 F. Supp. 3d at 604.  Fundamentally, the Lanham Act sets a five-year

benchmark of exclusive and continuous use of a mark as constituting *prima facie* evidence of

acquired distinctiveness.  15 U.S.C § 1052(f).  It is undisputed that defendants' alleged

infringement occurred less than three years after the marks were created, and CMB effectively

concedes that "there is no set period of time that, if reached, will automatically give a mark

secondary meaning status." *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 353 (S.D.N.Y.

1998) (citing *Centaur Commc'ns*, 830 F.2d at 1225).  Generally, however, courts within this circuit adhere closely to the five years benchmark when analyzing this factor.  Against that backdrop, the length of use prior to SRB's alleged infringement is insufficient to support a finding of secondary meaning.  Simply put, three years length of use is too short to support a finding of secondary meaning in this case.  *See Black & Decker*, 944 F. Supp. at 227–28 (exclusive use for up to five years disfavors secondary meaning); *Jewish Sephardic*, 478 F. Supp. 2d at 346 ("discrete four-year period" of use disfavors secondary meaning); *Therapy Products, Inc. v. Bissoon*, 623 F. Supp. 2d 485, 494 (S.D.N.Y. 2009), *aff'd*, *Erchonia*, 410 F. App'x at 418 (use over four-year period insufficient to raise a question of fact on secondary meaning); *Gameologist*, 838 F. Supp. 2d at 160 (four-year period of use disfavors secondary meaning); *Medici Classics*, 683 F. Supp. 2d at 310 (seven-year period of use disfavors secondary meaning); *Lopez*, 883 F. Supp. 2d at 429 (fifteen-years' use favors secondary meaning).

As the last factor under the secondary meaning inquiry, courts consider the trademark claimant's advertising expenditures, which may be regarded as "indirect evidence of the possible effect that advertising may have on consumers' association of the trade dress with the source of the product."  *LVL XIII Brands*, 209 F. Supp. 3d at 654–55.  Stumbling from the start, however, CMB acknowledges that it did not engage in any paid advertising, a concession that, on its own, weighs against a finding of secondary meaning.  *See, e.g.*, *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 554 F. Supp. 3d 606, 617 (S.D.N.Y. 2020), *aff'd*, 839 F. App'x 545 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 235, 211 L. Ed. 2d 104 (2021) (advertising expenditures factor weighs against a finding of secondary meaning where claimant offered "no evidence showing how much money has been spent on these advertising activities.").

Nonetheless, CMB asks the Court to credit, first, defendants' unpaid social media and email marketing efforts, which plaintiff asserts occurred "with CMB's consent," Pl.'s Mem. at 14, and, second, Bernabeu's own social media posts from his personal accounts, which he baldly asserts generated "significant engagement" from his thousands of followers, Pl.'s Opp. Mem. at 9.   Building from there, CMB claims that, as opposed to paid advertising, the use of social media is standard within the industry, and, as evidence of its effectiveness, points to deposition testimony from Bruno in which he said that while the club operated as ANALOG BKNY, the night club's consumer demographics shifted from an "older" crowd to "a mix" of "younger and older" patrons.   *Id.* at 7; Bruno Dep. Tr. 93:5–94:16.   Bruno's testimony regarding the shift in demographics of the club's patrons that occurred while it operated as ANALOG BKNY is, at best, circumstantial evidence that advertising on social media may have been effective.   Beyond that, however, CMB does not offer any other evidence that targeted consumers saw Bernabeu's personal posts, that Bernabeu's personal followers include CMB's target consumers, that his posts were otherwise seen by CMB's target consumers, or that any reactions and comments to Bernabeu's personal posts were authored by CMB's target consumers.   Accordingly, at most, this factor minimally points in CMB's favor.[4]

On balance, then, CMB can credibly point to just one of the six factors in arguing that its ANALOG BKNY marks acquired secondary meaning by the time the parties' venture ended. While every factor "need not be proved," *Thompson Med. Co., Inc. v. Pfizer Inc.*, 753 F.2d 208,

---

[4] CMB also points to advertising expenditures occurring after defendants' alleged infringement began, which are therefore irrelevant to the secondary meaning inquiry.   *PaperCutter, Inc. v. Fay's Drug Co., Inc.*, 900 F.2d 558, 564 (2d Cir. 1990) ("To qualify for trademark protection, an owner of a descriptive mark must demonstrate that the mark had acquired secondary meaning before its competitor commenced use of the mark.").

217 (2d Cir.1985), where "only one of the factors probative of secondary meaning" is proved, such proof cannot sustain a finding of secondary meaning, *see Mana Prod., Inc. v. Columbia Cosms. Mfg., Inc.*, 65 F.3d at 1070 (affirming summary judgment dismissal where only factor pointing in claimant's favor was advertising); *see also Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 515 F. Supp. 3d 47, 68 (S.D.N.Y. 2021); *Gerffert Co. v. Dean*, 41 F. Supp. 3d 201, 217 (E.D.N.Y. 2014).  In sum, CMB has not sustained its burden of proving that the night club, using the contested marks, experienced sales success; that substantial unsolicited media coverage connecting the service to the marks reached target consumers; that the marks were widely copied; or that they were in use for a sufficient length of time.  Nor has plaintiff introduced a consumer study demonstrating Brooklyn night club patrons came to associate the ANALOG BKNY Trademarks with plaintiff's services.

All in all, summary judgment on the question of secondary meaning is appropriate where, as here, "a reasonable juror could not find that either term ha[d] acquired secondary meaning." *Morgans Grp.*, 2012 WL 1098276, at *6; *Lopez*, 883 F. Supp. 2d at 429 (finding that plaintiff's alleged mark lacked secondary meaning when the alleged infringement occurred).  Based on the pertinent record evidence, none of which is genuinely disputed, the Court concludes that the ANALOG BKNY trademarks had not acquired secondary meaning before defendants' alleged infringement occurred or at any time thereafter.  As such, the ANALOG BKNY trademarks are not entitled to protection under the Lanham Act, and CMB's claim under that Act fails as a matter of law.  Defendants' motion for summary judgment with respect to this claim is, therefore, granted on that ground.  *See Rockland*, 894 F. Supp. 2d at 324.[5]

---

[5] Given the Court's conclusion that the ANALOG BKNY trademarks are not entitled to protection, it is not necessary to consider prong two of plaintiff's trademark infringement claim—whether defendants' use of the mark is likely to cause consumers confusion as to the

CMB also asserts a federal trademark infringement claim with respect to its CLUB ANALOG trademark.  Essentially, CMB argues that the ANALOG BROOKLYN designation used by defendants as the club's name after the parties' arrangement ended infringes on its CLUB ANALOG mark.  As before, to succeed, CMB must be able to prove at trial (1) that the mark is entitled to protection under the Lanham Act, either because it is inherently distinctive, has acquired secondary meaning, or both, and (2) that SRB's use of the Analog Brooklyn name is "likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Savin Corp*, 391 F.3d at 456.

As a starting point, unlike the ANALOG BKNY marks, the CLUB ANALOG trademark is registered on USPTO's principal register in connection with "providing showrooms for the good of others in the field of sound system technologies; retail store services featuring sound system technology; speakers, and sound equipment." Am. Compl., Dkt. 41, Ex. 3.  Registration on the principal register creates a presumption, in satisfaction of the first requirement, that the mark is distinctive and therefore valid and entitled to protection.  *Savin*, 391 F.3d at 456. However, this presumption of validity can be overcome where a mark is generic or descriptive in nature of the mark.[6]  *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 442 (S.D.N.Y. 2016) (citing 15 U.S.C. §§ 1065, 1115(b)).  As is the case here, where a mark's

---

origin or sponsorship of their goods. *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 216 (2d Cir. 1985) ("Where a mark is ineligible for protection, there is no need to examine likelihood of confusion.").

[6] Although the five-year time period set forth in § 1065 is not directly applicable here, it is helpful to observe that marks that have been registered for more than five years are incontestably distinctive for protectability purposes.  *See* 15 U.S.C. §§ 1065 and 1115(b); *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d at 442 (S.D.N.Y. 2016).

descriptive nature rebuts the presumption of validity, that mark is entitled to protection only

where it has acquired secondary meaning.  *See Bristol–Myers*, 973 F.2d at 1040.

CMB does not affirmatively dispute that its CLUB ANALOG mark is descriptive, but

instead relies on the presumption that, by registering it on the principal register, the mark is

inherently distinctive.  However, that presumption can be, plainly, rebutted here.  Instructively,

"[d]escriptive marks (like CHAPSTICK) are those consisting of words identifying qualities of

the product," *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d at 443, or the

"attributes of the goods, services, or business," *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d

558, 562 (2d Cir. 1990).   As with the ANALOG BKNY marks, CMB's CLUB ANALOG mark

is clearly descriptive: it provides "an immediate idea of . . . the characteristics of the goods"

plaintiff offers for sale—analog sound systems—and falls neatly in line with other cases finding

marks descriptive.[7]

Consistent with this well-established case law, the CLUB ANALOG mark must be found

to be descriptive in nature, and, therefore, is entitled to protection only if it has acquired

secondary meaning.  It has not.  Indeed, not one of the law's six factors favor a finding of

secondary meaning with respect to the CLUB ANALOG mark.  *See Bristol-Myers*, 973 F.2d

---

[7] *See, e.g.*, *In re JC Hospitality LLC*, 802 Fed. Appx. 579 (Fed. Cir. 2020) (THE JOINT, bar, night club, and restaurant); *William R. Warner & Co. v. Eli Lilly & Co*., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161 (1924) (COCO–QUININE, chocolate flavored quinine); *W.E. Bassett Co. v. Revlon, Inc.*, 354 F.2d 868 (2d Cir. 1966) (TRIM, fingernail clippers); *Jockey Club, Inc. v. Jockey Club of Las Vegas, Inc.*, 595 F.2d 1167, (9th Cir. 1979) (JOCKEY CLUB, condominium apartments); *Express Services, Inc. v. Careers Express Staffing Services*, 1999 WL 1073614 (E.D. Pa. 1999), *aff'd*, 216 F.3d 1075, 57 U.S.P.Q.2d 1940 (3d Cir. 2000), *cert. denied*, 121 S. Ct. 656, 148 L. Ed. 2d 559 (U.S. 2000) (EXPRESS, employment services); *Food Fair Stores, Inc. v. Lakeland Grocery Corp.*, 301 F.2d 156, 133 U.S.P.Q. 127 (4th Cir. 1962), *cert. denied*, 371 U.S. 817, 9 L. Ed. 2d 58, 83 S. Ct. 31, 135 U.S.P.Q. 502 (1962) (FOOD FAIR, supermarket).

at 1041.  CMB is, indeed, empty-handed in the face of SRB's summary judgment argument that its mark is not entitled to federal trademark protection.  Pointedly, CMB proffers no evidence of advertising expenditures, media coverage, sales, or consumer studies indicative of secondary meaning.  The only instance of plagiarism it offers is defendants' use of an allegedly similar mark, which, again, is far from the widespread copying necessary to support this factor.  *See Lopez*, 883 F. Supp. 2d at 428.  Finally, as to the length of use in commerce, plaintiff has not introduced evidence of ever having used the CLUB ANALOG mark in commerce, though the Court draws the reasonable inference that the mark was first used in 2018 as identified by the trademark registration certificate.  But, even making that inference, the less-than-a-year period of use between plaintiff's first use of the mark and defendant's alleged infringement is insufficient to establish secondary meaning.  Accordingly, because the CLUB ANALOG mark is descriptive but lacks secondary meaning, plaintiff's mark is not entitled to protection under the Lanham Act.  Defendants' motion for summary judgment with respect to this claim is therefore granted on that ground.

Pressing an allied Lanham Act claim, CMB seeks relief for false designation of origin, passing off, and unfair competition.  In relevant part, Section 43(a) of the Lanham Act "'prohibits any misrepresentation likely to cause confusion as to the source or the manufacturer of a product.'"  *Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC*, 335 F. Supp. 3d 566, 594 (S.D.N.Y. 2018) (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995)); *see* 15 U.S.C § 1125(a)(1)(A).  Essentially, plaintiff argues that because SRB continued to use the ANALOG BKNY marks after the parties ended their arrangement, patrons were misled by the false representation that the night club was still using CMB's sound system.

However, "it is well settled that the standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114)." *Twentieth Century Fox Film Corp. v. Marvel Enter., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002) (citing *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986)); *see also Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, No. 12 Civ. 5354, 2016 WL 1317524, at *6 (E.D.N.Y. Mar. 31, 2016).  That is, a claimant must establish first, that it owns a valid mark entitled to protection and, second, that the alleged infringer's use of the mark is likely to cause confusion.  *Hypnotic Hats, Ltd.*, 335 F. Supp. 3d at 594; *Lopez*, 883 F. Supp. 2d at 413; *Jewish Sephardic*, 478 F. Supp. 2d at 356.

As a result, CMB's § 43 claim fails for the same reasons its § 32 claim failed.  *See Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 410 n.7 (S.D.N.Y. 2006) ("Trademark infringement is a narrower form of unfair competition, [but] the same legal test applies with respect to both.").  Furthermore, CMB's asserted common law trademark rights to the ANALOG mark fail because it has not offered any evidence that its "use of the mark has been deliberate and continuous, not sporadic, casual or transitory." *Momentum Luggage & Leisure Bags v. Jansport, Inc.*, No. 00 Civ. 7909, 2001 WL 830667, at *5 (S.D.N.Y. July 23, 2001), *aff'd*, 45 F. App'x 42 (2d Cir. 2002).  In short, defendants are entitled to judgment on this claim.

CMB's final Lanham Act claim is also asserted under § 43(a), which, in addition to false designations of origin, imposes liability for commercial advertising that misleads consumers as to the "the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  15 U.S.C § 1125(a)(1)(B).  Fashioned as a false

advertising claim, plaintiff argues, essentially, that by continuing to advertise the club as Analog Brooklyn after the parties terminated their arrangement, defendants misled consumers into believing that the club still utilized CMB's sound system.  Pl.'s Mem. at 29–32.)[8]

Recharacterization of plaintiff's claim is required at the starting gate.  CMB's false advertising claim, as stated in the amended complaint, appears to be a false association claim in disguise and, considered as such, clearly fails.[9]  *See, e.g.*, *Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220, 226 (3d Cir. 2017).  Under the Lanham Act, false advertising and false association are "two distinct bases of liability," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014), with a false association claim "prohibit[ing] the use of another's trademark in a way that deceptively claims 'affiliation, connection, or association,'" *XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 185–86 (E.D.N.Y. 2016) (citing 15 U.S.C. § 1125(a)(1)(A)).  Whether or not CMB adequately teased out the differences between the two types of claims, the associational claim is precisely what it argues here: that, after defendants adopted a name for the club that was confusingly similar to—or, as CMB would have it, infringed upon—CMB's ANALOG BKNY trademarks, thereby causing consumers to mistakenly believe that CMB was still associated with the club.  *See, e.g.*, Am. Compl. ¶ 89.  The claim does not survive summary judgment.

---

[8] In the absence of argument, CMB is deemed to have waived any false advertising claim under the Lanham Act with respect to its CLUB ANALOG mark.

[9] "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99, 111 S. Ct. 1711, 1718, 114 L. Ed. 2d 152 (1991).

Specifically, construed as a false association argument, the claim suffers from the same

defect identified with respect to CMB's other Lanham Act claims: plaintiff's descriptive

ANALOG BKNY marks lack secondary meaning and therefore are not valid, protectable

trademarks. *C.f. Sik Gaek, Inc. v. Yogi's Two, Inc.*, No. 14 Civ. 6053, 2018 WL 4845832, at *7

(E.D.N.Y. Sept. 7, 2018), *report and recommendation adopted,* 2018 WL 4845735 (E.D.N.Y.

Oct. 4, 2018) ("To state a claim for false association, a plaintiff must establish, [among other

requirements], that: (1) it has a valid mark that is entitled to protection under the Lanham Act.")

(internal citations omitted).

Indeed, even construed as a false advertising claim, defendants are still entitled to

summary judgment. To state a false advertising claim under the Lanham Act, CMB would have

to prove "'that the challenged message is (1) either literally or impliedly false, (2) material, (3)

placed in [] commerce, and (4) the cause of actual or likely injury to the plaintiff.'" *Energizer,*

*LLC v. MTA Trading, Inc.*, No. 20-CV-1583, 2021 WL 2453394, at *4 (S.D.N.Y. June 16, 2021)

(quoting *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d

Cir. 2016)).[10] To satisfy the injury requirement, a false advertising claimant "must demonstrate

injury by way of lost sales or damage to business reputation." *Dependable Sales & Serv., Inc. v.*

*TrueCar, Inc.,* 394 F. Supp. 3d 368, 374 (S.D.N.Y. 2019). The injury must be "economic or

---

[10] Overspreading their § 43 arguments, defendants contend that CMB's false advertising claim
fails because CMB has failed to show that it has a valid protectable trademark. However, unlike
a § 43 claim for false designation of origin, it is not clear that such a showing is essential to
stating a meritorious § 43 false advertising claim. *See Genometrica Rsch. Inc. v. Gorbovitski*,
No. 11 Civ. 05802, 2013 WL 394892, at *13 (E.D.N.Y. Jan. 31, 2013) ("With regard to
Plaintiffs' false advertising claim which is asserted under Section 43(a)(1)(B), it does not appear
that a plaintiff is required to allege that it has a protectable mark."); *see also Seat Sack, Inc. v.*
*Childcraft Educ. Corp*., 417 F. App'x 931, 933 (Fed. Cir. 2011) ("Unlike a claim for unregistered
trademark infringement, a plaintiff claiming false advertising under the Lanham Act need not
demonstrate that it has protectable trademark rights.").

reputational injury flowing directly from the deception wrought" and such injury "occurs when deception of consumers causes them to withhold trade from the plaintiff." *3B Med., Inc. v. SoClean, Inc.*, 857 F. App'x 28 (2d Cir. 2021). "While a presumption of injury may arise when an advertisement makes false claims about a direct competitor, where, as here, a misleading advertisement does not make comparative claims about a direct competitor, a plaintiff must demonstrate actual injury and causation." *Id.*

CMB's final point on this claim is that, following the demise of the joint venture night club, SRB's continued utilization of either the ANALOG BKNY marks or the ANALOG BROOKLYN designation, despite the fact that it had installed a replacement sound system, caused it injury. *See* Pl.'s Mem. at 31. Plaintiff argues that because there was no guarantee that SRB's replacement sound system would produce the same sound quality as its system, "CMB's reputation stood to be damaged". *See id.* Yet, CMB has not claimed, let alone come forward with any evidence, suggesting either that the replacement sound system was poorer in quality than its own, or that CMB's reputation or commercial success was harmed as a result of defendants' continued use of the ANALOG designations. CMB has therefore not created a triable issue of fact that, even if defendants engaged in false advertising, such advertising caused it actual or likely injury. Accordingly—whether construed as a false advertising or association claim— defendant's motion for summary judgment must also be granted. *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 487 (S.D.N.Y. 2020).

B. New York State Law Claims

CMB also brings claims under New York General Business Law §§ 349 and 350 for deceptive trade practices and false advertising, both of which require it to show (1) that the complained-of conduct is consumer-oriented; (2) that defendants are engaged in a deceptive act

or practice; and (3) that the plaintiff was injured by this practice." *Blockchain Lux. S.A. v. Paymium, SAS*, No. 18 Civ. 8612, 2019 WL 4199902, at *11 (S.D.N.Y. Aug. 7, 2019) (quoting *Heskiaoff v. Sling Media, Inc.*, 719 F. App'x 28, 31 (2d Cir. 2017)).  However, with respect to the injury requirement, CMB must allege "specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 435–36 (S.D.N.Y. 2012) (citing cases).

CMB fails to do so.  Instead, it nakedly alleges that defendants' unauthorized use of CMB's marks is causing "a likelihood of confusion or of misunderstanding as to the source" of the audio equipment used at the club, which has "damaged the public."  Am. Compl. ¶ 94.  But "this alleged injury—confusion and deception of the consuming public—is not distinct from the very harm that trademark laws generally seek to redress and thus is not over and above ordinary trademark infringement." *Coach, Inc.*, 908 F. Supp. at 436 (internal quotations omitted).  Consequently, because CMB "has not proffered any other evidence bearing on injury to the public interest," *id.*, summary judgment in favor of defendants is granted on these claims.

Finally, plaintiff asserts defendants are liable for trademark dilution under New York State law.  To succeed on a claim for trademark dilution, a plaintiff must prove (1) that it has a trademark entitled to protection, and (2) that there is a likelihood of dilution. *Knowles-Carter v. Feyonce, Inc.*, 347 F. Supp. 3d 217, 229 (S.D.N.Y. 2018) (citing *U-Neek, Inc. v. Wal-mart Stores, Inc.*, 147 F. Supp. 2d 158, 175 (S.D.N.Y. 2001)).  A plaintiff can prove the first prong by demonstrating its mark is inherently distinctive or has acquired secondary meaning. *Id.*

Plaintiff's claim fails on this first prong.  As established above, plaintiff's alleged marks are not inherently distinctive, nor have any of them acquired secondary meaning.  Defendants are therefore entitled to summary judgment on this claim too.

<u>Conclusion</u>

In line with the foregoing, plaintiff's motion for partial summary judgment is denied, and defendants' cross-motion is granted in its entirety.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So ordered.

Dated:    Brooklyn, New York
          June 19, 20202

                                    /s/ Eric N. Vitaliano
                                    ERIC N. VITALIANO
                                    United States District Judge